## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BRITTNEY ALZYOUD,

    Plaintiff,

v.

CITY OF CHOCTAW, OKLAHOMA, a municipal corporation; KELLY MARSHALL, individually and in her official capacity as Chief of Police; MICHAEL CUNNINGHAM, individually and in his official capacity as Deputy Chief of Police; STUART DRAKE, individually and in his official capacity as City Manager; and JOHN SMITH, individually and in his official capacity as former Human Resources Director,

    Defendants.

Case No.

### COMPLAINT

Plaintiff, Brittney Alzyoud, by and through her attorney, Jonathan Sutton, SUTTON AND ASSOCIATES, P.C., files this Complaint against Defendants City of Choctaw, Oklahoma; Kelly Marshall; Michael Cunningham; Stuart Drake; and John Smith, and alleges and states as follows:

### NATURE OF THE ACTION

1. This is an action for damages and equitable relief arising out of Defendants' unlawful discrimination and retaliation against Plaintiff, a former Operations Captain of the Choctaw Police Department ("CPD"), asserting the following claims: retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count I); sex discrimination in violation of Title VII (Count II); retaliation for opposing race discrimination in violation of 42 U.S.C. § 1981, as enforced through 42 U.S.C. § 1983 (Count III); denial of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983 (Count IV); First Amendment retaliation,

actionable under 42 U.S.C. § 1983 (Count V); and deprivation of procedural due process in violation of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983 (Count VI).

2.    Plaintiff opposed sex discrimination in CPD's hiring practices and opposed race discrimination in the termination of Officer Dumas, the only Black officer employed by CPD. In direct response to that protected opposition, Defendants subjected Plaintiff to a campaign of escalating retaliation—including baseless discipline, removal of duties, prolonged administrative leave, and ultimately termination—while similarly situated male officers who engaged in far more serious misconduct received little or no discipline.

## JURISDICTION AND VENUE

3.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiff's claims arise under the Constitution and laws of the United States, including Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Jurisdiction is further conferred by 42 U.S.C. § 2000e-5(f)(3).

4.    Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because Defendants reside in this District and all events or omissions giving rise to the claims occurred in Oklahoma County, Oklahoma, within this District.

## PARTIES

5.    Plaintiff Brittney Alzyoud is an adult female resident of Oklahoma County, Oklahoma. At all relevant times, Plaintiff was an "employee" of Defendant City of Choctaw within the meaning of 42 U.S.C. § 2000e(f).

6.    Defendant City of Choctaw, Oklahoma (the "City"), is an Oklahoma municipal corporation located in Oklahoma County, Oklahoma, which operates the Choctaw Police Department. At all relevant times, the City was Plaintiff's "employer" within the meaning of 42

U.S.C. § 2000e(b) and a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

7.    Defendant Kelly Marshall was, at all relevant times, the Chief of Police of the Choctaw Police Department and a final policymaker and/or final decision-maker for the City with respect to CPD personnel matters, including discipline and termination. She is sued in her individual capacity under 42 U.S.C. § 1983 (including for the violation of rights secured by 42 U.S.C. § 1981) and in her official capacity for equitable relief. At all relevant times, Defendant Marshall acted under color of state law.

8.    Defendant Michael Cunningham was, at all relevant times, the Deputy Chief of Police of CPD, second in command of the department, and a supervisor with authority over Plaintiff. He is sued in his individual capacity under 42 U.S.C. § 1983 (including for the violation of rights secured by 42 U.S.C. § 1981) and in his official capacity for equitable relief. At all relevant times, Defendant Cunningham acted under color of state law.

9.    Defendant Stuart Drake was, at all relevant times, the City Manager of the City of Choctaw. As reflected in the City's own correspondence dated August 27, 2025, Defendant Drake received Chief Marshall's recommendation to terminate Plaintiff's employment, adopted the findings of the internal investigation, convened the pre-determination meeting, and reserved to his office the "final determination" regarding discipline up to and including termination. Defendant Drake was a final decision-maker and/or final policymaker for the City with respect to the termination of CPD personnel. He is sued in his individual capacity under 42 U.S.C. § 1983 (including for the violation of rights secured by 42 U.S.C. § 1981) and in his official capacity for equitable relief. At all relevant times, Defendant Drake acted under color of state law.

10.    Defendant John Smith was, at all relevant times, the Human Resources Director of the City of Choctaw. Defendant Smith received Plaintiff's August 16, 2024 report of

3

discrimination and thereafter personally participated in the disciplinary and pre-termination process directed at Plaintiff, and, upon information and belief, in the administration of Plaintiff's termination, the cutoff of her benefits, and the City's opposition to her claim for unemployment benefits. Defendant Smith has since resigned his position. He is sued in his individual capacity under 42 U.S.C. § 1983 (including for the violation of rights secured by 42 U.S.C. § 1981) and in his official capacity for equitable relief. At all relevant times, Defendant Smith acted under color of state law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.    Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about May 6, 2025, Charge No. 564-2025-02001, alleging discrimination and retaliation by the City.

12.    The EEOC issued Plaintiff a Notice of Right to Sue. The undersigned counsel did not receive the Notice of Right to Sue until May 12, 2026. Plaintiff files this action within ninety (90) days of her receipt of that Notice. Plaintiff has therefore exhausted all administrative prerequisites to suit under Title VII. Neither Plaintiff nor her counsel received or had access to the Notice of Right to Sue before May 12, 2026. No administrative exhaustion is required for Plaintiff's claims arising under 42 U.S.C. §§ 1981 and 1983.

## FACTUAL ALLEGATIONS

### *Plaintiff's Exemplary Service and Promotion*

13.    Plaintiff joined CPD as a patrol officer in April 2018. Over more than seven years of service, Plaintiff consistently received satisfactory or better performance evaluations, completed the FBI-LEEDA Leadership Trilogy, received commendations and praise from outside agencies and the Choctaw City Council, and was entrusted with supervisory and Field Training Officer ("FTO") responsibilities.

4

14.    In December 2023, Plaintiff was promoted to Operations Captain, making her third in command of the department. Plaintiff's promotion to Captain conclusively demonstrates that she was qualified for her position and meeting the City's legitimate performance expectations.

### *Plaintiff Opposes Sex Discrimination in Hiring*

15.    On or about July 25, 2024, CPD declined to hire a qualified female applicant. The applicant's written test scores were higher than those of most male officers, and her physical test time was passing—a fact confirmed by a Council on Law Enforcement Education and Training ("CLEET") instructor and reflected in CPD's own paperwork. During the physical test, Defendant Cunningham permitted male applicants to use their knees on the crawl portion while attempting to deny the female applicant the same allowance.

16.    In connection with the decision not to hire the female applicant, Defendant Cunningham made sexually demeaning comments about the applicant's physical appearance, including stating that she was "a bit heavy chested" and asking, in substance, "You really want that f***ing backing you?"

17.    Plaintiff opposed the discriminatory treatment of the applicant at the time of the July 25, 2024 testing, including by consulting the retired captain who had administered the physical test for approximately twenty years, who confirmed the applicant's time was passing. Defendant Cunningham responded by yelling at Plaintiff in front of officers and applicants, and thereafter began treating Plaintiff differently.

18.    On August 15, 2024, Plaintiff reported the discriminatory comments and the discriminatory handling of the female applicant's candidacy to Chief Marshall. On August 16, 2024, Plaintiff reported the same concerns to the City's Human Resources Director, John Smith. Mr. Smith has since resigned during the pendency of the EEOC investigation.

19. Plaintiff's reports of August 15 and 16, 2024, constituted protected opposition to practices Plaintiff reasonably and in good faith believed to be unlawful sex discrimination under Title VII.

### *Retaliation Begins Within One Week*

20. On August 23, 2024, one week after Plaintiff's protected complaints, Plaintiff was written up, by letter dated August 22, 2024, for eating lunch with other officers. The purported directive underlying the write-up had never been issued to the department, and no other officer, before or since, has been disciplined for the same conduct. Defendant Cunningham himself subsequently had multiple officers, including Plaintiff, eat together, and no discipline resulted.

### *Plaintiff Opposes Race Discrimination Against Officer Dumas*

21. In September 2024, Chief Marshall moved to terminate Officer Chaunsey Dumas, the only Black officer employed by CPD, purportedly for attendance. Officer Dumas's attendance record was exemplary: he had only two legitimate attendance occurrences in approximately four years of service.

22. By contrast, multiple white CPD officers accumulated twenty or more attendance occurrences annually and received no discipline whatsoever.

23. Plaintiff, as Officer Dumas's supervisor, opposed his termination and communicated to Chief Marshall that the proposed termination was unjustified and discriminatory in light of the treatment of white comparator officers. Plaintiff reasonably and in good faith believed that the termination of Officer Dumas constituted unlawful race discrimination.

24. In response, Chief Marshall excluded Plaintiff entirely from the disciplinary process of an officer under Plaintiff's direct command, for pretextual reasons, and proceeded to terminate Officer Dumas herself, in violation of the applicable Collective Bargaining Agreement ("CBA").

6

25.    Defendant Smith personally participated in the retaliation and in suppressing Plaintiff's opposition. On September 24, 2024, when Plaintiff raised her concerns regarding the discriminatory and retaliatory conduct, Defendant Smith warned Plaintiff to be "cautious" because "First Amendment rights don't apply to government employees." On September 25 and 26, 2024, with Chief Marshall present, Defendant Smith berated Plaintiff over her truthful response to Officer Dumas's grievance, ordered her to submit only the response Defendant Smith dictated, forbade her from providing it to anyone else, told her she was "messing in my tent," and, when Plaintiff asked that his directive be put in writing, refused, stating, "no, I expect you to act like a captain."

26.    On or about September 19, 2024, Defendant Cunningham also advised Plaintiff that Defendant Drake, the City Manager, had received reports regarding Plaintiff's personal Facebook activity and "was not happy"; although Defendant Drake and Chief Marshall were blocked from Plaintiff's account, "they have people calling them" about her posts.

27.    Plaintiff's opposition to the race-based termination of Officer Dumas constituted protected activity under Title VII's opposition clause, 42 U.S.C. § 2000e-3(a), under 42 U.S.C. § 1981, which prohibits retaliation against an individual who opposes race discrimination directed at another person, and constituted speech by a citizen on a matter of public concern protected by the First Amendment and actionable under 42 U.S.C. § 1983.

### *Escalating Retaliation:*
### *Removal of Duties, Administrative Leave, and a Conflicted Investigation*

28.    On or about August 13, 2024, following her protected activity, which began on July 25, 2024, Plaintiff was stripped of her FTO/training authority in favor of the department's newest Lieutenant, Austin Jacox—a change announced by email without any prior discussion with Plaintiff—, notwithstanding that CPD policy assigned that authority to the Operations Captain.

29.    The retaliation escalated in 2025. On February 24, 2025, Chief Marshall issued Plaintiff a written reprimand for "insubordination" arising from a private, closed-door conversation with Defendant Cunningham on February 20, 2025, in which Plaintiff had questioned the department's double standards, including Defendant Cunningham's cohabitation with a convicted felon. The reprimand imposed a one-day suspension without pay and mandatory training, and expressly invoked the pretextual August 22, 2024 lunch letter as the predicate for progressive discipline. Plaintiff timely grieved the discipline on March 6, 2025; Defendant Cunningham denied the grievance on March 12, 2025, Chief Marshall denied it on March 20, 2025, and Defendant Drake personally denied it on April 3, 2025.

30.    Thereafter, following a routine call at a residence during which Plaintiff and other officers engaged in standard community-caretaking activity, Plaintiff was placed on administrative leave on or about April 22, 2025, and subjected to an internal investigation. Exterior doors at the property were open; officers cleared the buildings consistent with routine practice; vehicles were run solely to identify a point of contact for loose animals on the property; and there was no complainant, no victim, and no evidence that any crime occurred. The property owner, when contacted, had no complaint regarding Plaintiff's actions.

31.    The internal investigation was led by Defendant Cunningham, the very official about whom Plaintiff had lodged discrimination complaints, an obvious and disqualifying conflict of interest.

32.    The investigation was internally contradictory. Among other things, the City claimed that Plaintiff stated officers were "about to do illegal stuff," yet the City's own investigative report classified that allegation as "Unfounded." Defendants faulted Plaintiff for entering a structure, yet Chief Marshall herself entered the same structure the following day—

8

captured on body camera and admitted by Defendant Cunningham—and neither the Chief nor any other officer who entered was disciplined.

33.    The investigation was purportedly concluded in May 2025, yet Plaintiff was never so informed and was instead kept on administrative leave, in limbo, for approximately five additional months.

34.    The disciplinary and termination decisions directed at Plaintiff were made and ratified at the highest levels of City government. By memorandum dated August 27, 2025, Defendant Drake acknowledged receipt of Chief Marshall's recommendation to terminate Plaintiff's employment, adopted the findings of the conflicted investigation as "Sustained" and "Founded," convened the pre-determination meeting, and reserved to his office the "final determination" regarding Plaintiff's discipline up to and including termination. Defendant Smith was copied on that memorandum and participated in the pre-determination process, and Defendant Drake thereafter issued the City's untimely response to Plaintiff's grievance.

### *The Termination Is Weaponized Against Plaintiff's EEOC Participation*

35.    Plaintiff filed her EEOC Charge on May 6, 2025, and participated in EEOC mediation with the City on August 20, 2025. On or about nine days after Plaintiff declined the City's settlement offer at EEOC mediation, on August 29, 2025, the City issued Plaintiff an "intent to terminate" letter.

36.    During grievance mediation under the CBA on September 25, 2025, the City agreed to pause any employment action until a larger mediation occurred. The city then terminated Plaintiff fifteen days later, on October 10, 2025, in breach of that agreement.

37.    Plaintiff was terminated effective October 10, 2025, but was not notified until October 17, 2025, and then only because Plaintiff happened to contact City HR about an unrelated paycheck issue. Plaintiff's health benefits were cut off at the end of that same month, leaving her

9

a drastically shortened window to obtain replacement insurance. The City also failed to pay Plaintiff accrued holiday time in retaliation for her protected conduct. Plaintiff timely grieved her termination on October 21, 2025; the City denied that grievance on November 13, 2025.

38.    The City thereafter opposed Plaintiff's claim for unemployment benefits based on its false assertion that Plaintiff had conducted an "illegal search," causing Plaintiff to be denied unemployment compensation based on stigmatizing and untrue allegations.

39.    When Plaintiff returned department property on October 30, 2025, she was treated like a criminal: escorted, barred from the front entrance, and stripped of uniform items she had purchased with her own funds, treatment inconsistent with standard CPD off-boarding practice.

40.    Plaintiff has since been hired as a police officer by another municipality, where she received a citation of commendation for performing precisely the type of entry for which the city claims it fired her, an entry that saved a woman's life.

### Similarly Situated Male Officers Were Treated More Favorably

41.    Male CPD officers engaged in significantly more serious misconduct and were not terminated; most were not disciplined at all. That misconduct includes, without limitation: unlawful searches; sexual misconduct on duty, including officers engaging in sexual relationships with victims and posting explicit content; mishandling of sexual assault cases; racist and sexist messaging; driving on duty with a suspended license; falsification of work time; use-of-force violations; inappropriate sexual relationships arising from domestic-disturbance arrests; and cohabitation with a convicted felon in violation of CPD Policy 319.5.4(e) and 319.5.9(m).

42.    Each such male officer was retained; Plaintiff—the female Captain who opposed sex and race discrimination—was terminated.

### The City's Stated Reasons Are Pretextual

43.     Defendants' proffered justifications for Plaintiff's discipline and termination are pretext for discrimination and retaliation, as demonstrated by, among other things: (a) the temporal proximity between each act of protected activity and each adverse action; (b) Defendants' shifting and internally contradictory explanations; (c) pervasive factual errors in Defendants' official statements, including misnaming the City's own Deputy Chief, misstating Plaintiff's name, citing a non-existent incident address, and mischaracterizing the tenure of a witness officer; (d) Defendants' reliance on policy language that was not in effect at the relevant times and their refusal to produce historical policy versions despite repeated requests; (e) the absence of any legitimate contemporaneous documentation of the performance deficiencies now alleged, and the City's reliance instead on purported counseling letters bearing the wrong officer name, wrong dates, and wrong authors, which were not maintained in Plaintiff's official personnel file; (f) the conflict of interest infecting the investigation; and (g) Defendants' violations of the City's own grievance procedures and CBA.

## COUNT I
### RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3(a)
### (Against Defendant City of Choctaw)

44.     Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

45.     Plaintiff engaged in protected activity under Title VII by, among other things: (a) opposing sex discrimination in the treatment of the female applicant (July 25–August 16, 2024); (b) opposing the race-based termination of Officer Dumas (September 2024); (c) filing her EEOC Charge (May 6, 2025); and (d) participating in EEOC mediation (August 20, 2025). Title VII's opposition clause protects opposition to discrimination directed at third parties, including co-workers and applicants.

11

46. The City, through its decision-makers—including Defendants Marshall, Cunningham, Smith, and Drake—had actual knowledge of Plaintiff's protected activity.

47. The City subjected Plaintiff to materially adverse actions that would dissuade a reasonable employee from engaging in protected activity, including: baseless selective discipline; a written reprimand and one-day suspension without pay; removal of FTO authority; prolonged administrative leave; issuance of an intent-to-terminate letter on or about nine days after Plaintiff declined the City's mediation offer; termination; opposition to and denial of unemployment benefits; abrupt benefit cutoff with delayed notice of termination; and degrading off-boarding treatment.

48. A causal connection exists between Plaintiff's protected activity and the adverse actions, as shown by close temporal proximity (discipline within seven days of her complaints; intent to terminate within approximately nine days of her mediation refusal), the City's shifting and false explanations, unequal enforcement against Plaintiff, and the procedural irregularities described above. But for Plaintiff's protected activity, the City would not have taken the adverse actions against her.

49. As a direct and proximate result, Plaintiff has suffered and continues to suffer lost wages and benefits, lost earning capacity, emotional distress, humiliation, damage to her professional reputation, and other pecuniary and non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittney Alzyoud respectfully requests that this Court enter judgment in her favor and against Defendant City of Choctaw, as allowed by law, and award the following relief:

A. Back pay, including lost wages, accrued holiday pay, and the value of lost benefits, with prejudgment interest;

B.  Reinstatement to her position as Operations Captain with full seniority and benefits, or in the alternative, front pay;

C.  Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and injury to reputation, in an amount to be determined at trial;

D.  A declaratory judgment that Defendants' conduct violated Title VII, and appropriate injunctive relief, including expungement of the unfounded disciplinary findings from Plaintiff's personnel records and correction of the City's statements to the Oklahoma Employment Security Commission;

E.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

F.  Pre- and post-judgment interest as allowed by law; and

G.  Such other and further relief as the Court deems just and equitable.

## COUNT II
## SEX DISCRIMINATION (DISPARATE TREATMENT) IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2(a)
### (Against Defendant City of Choctaw)

50.  Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

51.  Plaintiff is female and a member of a protected class. Plaintiff was qualified for her position, as demonstrated by her promotion to Operations Captain, her training and commendations, and her satisfactory or better evaluations.

52.  The City subjected Plaintiff to adverse employment actions, including selective discipline, removal of duties, administrative leave, and termination.

53.  The City treated similarly situated male officers more favorably: male officers who committed substantially more serious misconduct—including unlawful searches, on-duty sexual misconduct, use-of-force violations, falsification of time, and policy violations—were retained and largely undisciplined, while Plaintiff was terminated for conduct that the City's own investigation

could not substantiate and for which other officers, including Chief Marshall herself, were not disciplined.

54.    Plaintiff's sex was a motivating factor in the City's adverse treatment of her. The City's proffered reasons are pretext for sex discrimination.

55.    As a direct and proximate result, Plaintiff has suffered the damages described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittney Alzyoud respectfully requests that this Court enter judgment in her favor and against Defendant City of Choctaw, as allowed by law, and award the following relief:

A.    Back pay, including lost wages, accrued holiday pay, and the value of lost benefits, with prejudgment interest;

B.    Reinstatement to her position as Operations Captain with full seniority and benefits, or in the alternative, front pay;

C.    Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and injury to reputation, in an amount to be determined at trial;

D.    A declaratory judgment that Defendants' conduct violated Title VII, and appropriate injunctive relief, including expungement of the unfounded disciplinary findings from Plaintiff's personnel records and correction of the City's statements to the Oklahoma Employment Security Commission;

E.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

F.    Pre- and post-judgment interest as allowed by law; and

G.    Such other and further relief as the Court deems just and equitable.

14

## COUNT III
## RETALIATION FOR OPPOSING RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981, AS ENFORCED THROUGH 42 U.S.C. § 1983
### (Against All Defendants)

56.    Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

57.    Section 1981 guarantees all persons the same right to make and enforce contracts—including the enjoyment of all benefits, privileges, terms, and conditions of the employment relationship—regardless of race, and prohibits retaliation against a person who opposes race discrimination directed at another. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

58.    Because Defendants are a municipality and municipal officials acting under color of state law, Plaintiff's rights under § 1981 are enforced through 42 U.S.C. § 1983. *See Jett v. Dallas Independent School District*, 491 U.S. 701 (1989); *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006).

59.    Plaintiff opposed the racially discriminatory termination of Officer Dumas, the only Black officer at CPD, who was fired for two attendance occurrences in four years while white officers with twenty or more annual occurrences went undisciplined. Plaintiff's opposition was based on a reasonable, good-faith belief that Officer Dumas's termination was race discrimination.

60.    In retaliation for that opposition, Defendants Marshall, Cunningham, Drake, and Smith, acting under color of state law, personally participated in, directed, and caused the adverse actions against Plaintiff described above, including excluding Plaintiff from the disciplinary process, initiating and conducting a conflicted and pretextual investigation of Plaintiff, stripping her of duties, placing and keeping her on administrative leave, and terminating her employment. Defendant Drake made the "final determination" to terminate Plaintiff notwithstanding and because of her protected opposition, and Defendant Smith participated in the pre-termination

process and in the administration of Plaintiff's termination, benefits cutoff, and the City's opposition to her unemployment claim.

61.     Defendant City is liable because the retaliatory acts were taken and ratified by Chief Marshall, the City's final policymaker and/or final decision-maker for CPD personnel and disciplinary matters, and by Defendant Drake, who made the "final determination" to terminate Plaintiff's employment, such that the actions represent official policy of the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny.

62.     Defendants' conduct was intentional, willful, and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages against the individual Defendants.

63.     As a direct and proximate result, Plaintiff has suffered the damages described herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittney Alzyoud respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, as allowed by law, and award the following relief:

A.     Back pay, including lost wages, accrued holiday pay, and the value of lost benefits, with prejudgment interest;

B.     Reinstatement to her position as Operations Captain with full seniority and benefits, or in the alternative, front pay;

C.     Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and injury to reputation, in an amount to be determined at trial;

D.     Punitive damages against Defendants Marshall, Cunningham, Drake, and Smith in their individual capacities;

E.    A declaratory judgment that Defendants' conduct violated 42 U.S.C. § 1981, and appropriate injunctive relief, including expungement of the unfounded disciplinary findings from Plaintiff's personnel records and correction of the City's statements to the Oklahoma Employment Security Commission;

F.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G.    Pre- and post-judgment interest as allowed by law; and

H.    Such other and further relief as the Court deems just and equitable.

## COUNT IV
## DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983
### (Against All Defendants)

64.    Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

65.    The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally discriminating against public employees on the basis of sex.

66.    Acting under color of state law, Defendants Marshall and Cunningham intentionally treated Plaintiff differently from, and less favorably than, similarly situated male officers with respect to discipline, investigation, leave, and termination, because of Plaintiff's sex. Male officers who engaged in comparable or far more serious conduct—including conduct materially identical to that for which Plaintiff was fired—were not investigated, disciplined, or terminated.

67.    Defendants Marshall and Cunningham each personally participated in the discriminatory conduct: Defendant Cunningham made sex-based derogatory comments, led the conflicted investigation of Plaintiff, and participated in the disciplinary process; Defendant Marshall imposed selective discipline, stripped Plaintiff of duties, placed and maintained Plaintiff

17

on leave, and terminated her. Defendants Drake and Smith likewise personally participated in and ratified the disparate discipline and termination of Plaintiff, while similarly situated male officers were neither investigated, disciplined, nor terminated.

68.    Defendant City is liable under *Monell* because the discriminatory acts were committed and ratified by Chief Marshall as the City's final policymaker and/or final decision-maker for CPD personnel matters, and by Defendant Drake as the official vested with the final determination regarding termination, and because the City's deliberate indifference to a pattern of disparate treatment of female officers and applicants—including the discriminatory rejection of the qualified female applicant—constituted an official custom or policy.

69.    Defendants' conduct violated clearly established law of which any reasonable official would have known. Defendants acted intentionally, willfully, and with malice or reckless indifference to Plaintiff's constitutional rights, entitling Plaintiff to punitive damages against the individual Defendants.

70.    As a direct and proximate result, Plaintiff has suffered the damages described herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittney Alzyoud respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, as allowed by law, and award the following relief:

A.    Back pay, including lost wages, accrued holiday pay, and the value of lost benefits, with prejudgment interest;

B.    Reinstatement to her position as Operations Captain with full seniority and benefits, or in the alternative, front pay;

C.     Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and injury to reputation, in an amount to be determined at trial;

D.     Punitive damages against Defendants Marshall, Cunningham, Drake, and Smith in their individual capacities;

E.     A declaratory judgment that Defendants' conduct violated the Equal Protection Clause of the Fourteenth Amendment, and appropriate injunctive relief, including expungement of the unfounded disciplinary findings from Plaintiff's personnel records and correction of the City's statements to the Oklahoma Employment Security Commission;

F.     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G.     Pre- and post-judgment interest as allowed by law; and

H.     Such other and further relief as the Court deems just and equitable.

## COUNT V
### FIRST AMENDMENT RETALIATION, 42 U.S.C. § 1983
### (Against All Defendants)

71.    Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

72.    Plaintiff spoke on matters of public concern, including race discrimination in the operation of a municipal police department, sex discrimination in public hiring, and misconduct and unequal enforcement of law and policy within CPD. To the extent Plaintiff's reports were made outside the scope of her ordinary job duties—including her reports to the City's Human Resources Director and her EEOC Charge—such speech was made as a citizen on matters of public concern.

73.    Plaintiff's interest in speaking on these matters outweighed any interest of the City in restricting such speech.

19

74.    Defendants took adverse actions against Plaintiff that would chill a person of ordinary firmness from engaging in such speech, and Plaintiff's protected speech was a substantial or motivating factor in those actions, as demonstrated by the timing, pretext, and unequal treatment described above.

75.    Defendant City is liable under *Monell* for the reasons stated above. As a direct and proximate result, Plaintiff has suffered the damages described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittney Alzyoud respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, as allowed by law, and award the following relief:

A.    Back pay, including lost wages, accrued holiday pay, and the value of lost benefits, with prejudgment interest;

B.    Reinstatement to her position as Operations Captain with full seniority and benefits, or in the alternative, front pay;

C.    Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and injury to reputation, in an amount to be determined at trial;

D.    Punitive damages against Defendants Marshall, Cunningham, Drake, and Smith in their individual capacities;

E.    A declaratory judgment that Defendants' conduct violated the First Amendment, and appropriate injunctive relief, including expungement of the unfounded disciplinary findings from Plaintiff's personnel records and correction of the City's statements to the Oklahoma Employment Security Commission;

F.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G.    Pre- and post-judgment interest as allowed by law; and

20

H.    Such other and further relief as the Court deems just and equitable.

## COUNT VI
## DEPRIVATION OF PROCEDURAL DUE PROCESS (PROPERTY AND LIBERTY INTERESTS), FOURTEENTH AMENDMENT, 42 U.S.C. § 1983
### (Against All Defendants)

76.    Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

77.    By virtue of the CBA and applicable City policies permitting termination only for cause, Plaintiff possessed a constitutionally protected property interest in her continued employment with CPD.

78.    Defendants deprived Plaintiff of that property interest without adequate process, including by: conducting a disciplinary investigation led by the very official Plaintiff had accused of discrimination; withholding the historical policy versions on which the charges were purportedly based; violating the mandatory steps and timelines of the grievance procedure; reneging on the agreement to pause action pending mediation; and terminating Plaintiff effective October 10, 2025, without notifying her until October 17, 2025. Defendants Drake and Smith personally participated in these deprivations: Defendant Drake presided over the deficient pre-determination process and made the final determination to terminate Plaintiff, and Defendant Smith administered that process.

79.    In addition, Defendants deprived Plaintiff of a constitutionally protected liberty interest in her good name and professional reputation by publishing false and stigmatizing charges—including that Plaintiff conducted an "illegal search"—in connection with her termination, including to the Oklahoma Employment Security Commission, foreclosing her unemployment benefits and impugning her fitness for her chosen profession, without affording her a meaningful name-clearing hearing.

21

80.    Defendant City is liable under *Monell* for the reasons stated above. As a direct and proximate result, Plaintiff has suffered the damages described herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittney Alzyoud respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally as allowed by law, and award the following relief:

A. Back pay, including lost wages, accrued holiday pay, and the value of lost benefits, with prejudgment interest;

B. Reinstatement to her position as Operations Captain with full seniority and benefits, or in the alternative, front pay;

C. Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and injury to reputation, in an amount to be determined at trial;

D. Punitive damages against Defendants Marshall, Cunningham, Drake, and Smith in their individual capacities under 42 U.S.C. § 1983;

E. A declaratory judgment that Defendants' conduct violated Title VII, 42 U.S.C. § 1981, and the First and Fourteenth Amendments, and appropriate injunctive relief, including expungement of the unfounded disciplinary findings from Plaintiff's personnel records and correction of the City's statements to the Oklahoma Employment Security Commission;

F. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988;

G. Pre- and post-judgment interest as allowed by law; and

H. Such other and further relief as the Court deems just and equitable.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

Jonathan M. Sutton, OBA No. 14968
SUTTON AND ASSOCIATES, P.C.
4 NE 10th Street, #422
Oklahoma City, OK 73104
*Attorney for Plaintiff*

23